IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | COMPLAINT |
| DTM CORPORATION, | ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) ) ) | |

## NATURE OF THE ACTION

The United States Equal Employment Opportunity Commission ("Plaintiff," "EEOC," or "the Commission") brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, Title I of the Americans with Disabilities Act of 1990 ("ADA"), and Title I of the Civil Rights Act of 1991 against DTM Corporation ("DTM" or "Defendant") to correct unlawful pregnancy-based employment practices that also resulted in unlawful medical examinations and inquires, to correct retaliatory practices, and to provide appropriate relief to Naima Ashigur, a former DTM employee who was adversely affected by such practices.

As discussed with greater particularity in paragraph 9 below, the EEOC alleges that DTM violated the Pregnancy Discrimination Act ("PDA"), an amendment to Title VII, by promulgating its Corporate Maternity Policy, a facially discriminatory policy that imposes greater burdens on pregnant employees regarding mandatory medical releases than is imposed on other employees similar in their ability or inability to work, and by enforcing this policy as a fetal protection policy and as a policy mandating suspension of pregnant women pending receipt of a medial release. The EEOC further alleges that DTM subjected Ashigur to unequal terms and

conditions of employment because of her pregnancies, including by repeatedly forcing her to obtain fitness-for-duty clearances, despite having already received clearances from her doctor, a requirement not imposed upon other employees similar in their ability or inability to work; by suspending her for seven days without pay pending the receipt of two such releases; and by subjecting her to harassment because of her pregnancy.

As discussed with more particularity in paragraph 13, EEOC also alleges that DTM violated the ADA by enforcing its Corporate Maternity Policy in a manner that subjected pregnant employees to medical inquiries and examinations that were not job related and consistent with business necessity. The EEOC further alleges that DTM repeatedly made pregnancy-related medical inquiries of Naima Ashigur and required her to undergo medical examinations which were not job related and consistent with business necessity.

Finally, as discussed with more particularity in paragraph 17, DTM has subjected Ashigur to retaliation in violation of the PDA and the ADA since July 2008, when she began to oppose the pregnancy discrimination and unlawful medical inquiries and examinations to which DTM subjected her. Its retaliatory actions included denying Ashigur maternity leave, refusing to allow her to return to work after she was medically cleared for duty after giving birth, and subjecting her to harassment, heightened scrutiny, and discipline. Because of each of DTM's unlawful employment practices, Ashigur has suffered damages, including monetary losses and severe emotional distress.

<u>JURISDICTION AND VENUE</u>

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1),(3) and 707 of Title VII, as amended, 42 U.S.C. §§ 2000e-5(f)(1), (3), and 2000e-6, as well as pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections

<u>STATEMENT OF CLAIMS</u>

8.    All conditions precedent to the institution of this lawsuit have been fulfilled. More than thirty days prior to the institution of this lawsuit, Naima Ashigur filed a charge with the Commission, Charge No. 531-2009-01554C, alleging violations of Title VII and the ADA by DTM.  After the parties participated in the Commission's investigation, EEOC issued a Letter of Determination notifying DTM that there was reasonable cause to believe that it had violated Title VII and the ADA through adverse employment actions.  EEOC then endeavored to remedy the unlawful employment practices through conciliation on behalf of Ashigur. After these efforts were unsuccessful, EEOC so notified Defendant and proceeded with the commencement of this lawsuit.

**COUNT I**
**(Engaging in a Pattern and Practice of Pregnancy Discrimination and Subjecting**
**Naima Ashigur to Unequal Terms and Conditions of Employment Because of Sex**
**in Violation of Title VII)**

9.    Since at least January 2008 and continuing to at least June 14, 2011, DTM has engaged in unlawful employment practices in violation of Sections 701(k), 703(a)(1), and 703(a)(2), of Title VII, 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1), (2), including but not limited to the following:

(a) maintaining and applying a facially discriminatory "Corporation Maternity Policy" that imposes greater burdens on pregnant employees regarding mandatory medical releases than is imposed on other employees similar in their ability or inability to work and thereby subjecting pregnant women to unequal terms and conditions of employment;

(b) enforcing its "Corporation Maternity Policy" as a fetal protection policy and thereby subjecting pregnant women to unequal terms and conditions of employment;

706(f)(1), (3) and 707 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) & (3) and 2000e-6, by Section 503(c) of the ADA, 42 U.S.C. § 12203(c), and by Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

PARTIES

3.     Plaintiff, EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of, inter alia, Title VII and Titles I and V of the ADA, and is expressly authorized to bring this action by Sections 706(f)(1), (3) and 707 of Title VII, 42 U.S.C. §§ 2000e-5(f)(1), (3), and 2000e-6, as well as by Section 107 of the ADA, 42 U.S.C. § 12117(a).

4.     At all relevant times, DTM has continuously been a Maryland corporation, doing business in Fort Washington, Maryland, and has continuously had at least 15 (fifteen) employees.

5.     At all relevant times, DTM has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

6.     At all relevant times, DTM has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e-(b), (g) and (h).

7.     At all relevant times, DTM has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

(c) enforcing its "Corporation Maternity Policy" as a policy mandating suspension of pregnant women pending receipt of a medial release and thereby subjecting pregnant women to unequal terms and conditions of employment;

(d) subjecting Naima Ashigur to unequal terms and conditions of employment because of her pregnancy by forcing her obtain fitness-for-duty medical releases, despite having already received clearances from her doctor, a requirement not imposed upon other employees similar in their ability or inability to work;

(e) subjecting Naima Ashigur to unequal terms and conditions of employment because of her pregnancy by suspending her for seven days without pay pending the receipt of two such releases;

(f) subjecting Naima Ashigur to unequal terms and conditions of employment by subjecting her to demeaning treatment and harassment because of her sex, including by forcing her to work in an environment in which her supervisor speculated to her co-workers about whether she was pregnant, threatened that he wanted to get her off of the contract because of her child-bearing status, threatened her that she "better not get pregnant again," and forced her to hide from DOD and DTM officials, including on one occasion for over an hour in a restroom, so that they would not observe her working while pregnant.

10.    The effect of the practices complained of in paragraph 9 (a) through (f) has been to deprive Ashigur and other female employees of equal employment opportunities and to otherwise adversely affect their employee status because of sex.

11.    The unlawful employment practices complained of in paragraph 9(a) through (f) were and are intentional.

12.    The unlawful employment practices complained of in paragraph(s) 9(a) through (f) were and are done with malice or reckless indifference to the federally protected rights of Ashigur and other female employees.

## COUNT II
### (Unlawful Medical Inquiries and Examinations in Violation of the ADA)

13.    Since no later than July 2008, DTM has engaged in a continuing course of unlawful employment practices, in violation of Section 102(d) of Title I of the ADA, 42   U.S.C. § 12112(d)(4)(A).  Specifically, DTM:

a.    Enforces its "Corporate Maternity Policy" in a manner that subjects pregnant employees to medical inquiries and examinations that are not job-related and consistent with business necessity;

b.    made pregnancy-related medical inquiries of Naima Ashigur that were not job-related and consistent with business necessity.

c.    required repeated pregnancy-based medical releases from Naima Ashigur that were not job-related and consistent with business necessity.

14.    The effect of the acts complained of in paragraph(s) 13(a) through (c) has been to deprive Naima Ashigur and other employees who were pregnant while employed by DTM of equal employment opportunities and to otherwise adversely affect their employee status.

15.    The unlawful employment practices complained of above in paragraph(s) 13(a) through (c) were and are intentional.

16.    The unlawful employment practices complained of in paragraph(s) 13(a) through (c) were and are done with malice or reckless indifference to the federally protected rights of Naima Ashigur and of other employees who were pregnant while employed by DTM.

## COUNT III
### (Retaliation in Violation of Title VII and the ADA)

17.    Since July 2008, Defendant has engaged in a continuous pattern of unlawful

employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a) and

Section 503 of the ADA, 42 U.S.C. § 12203(a)-(b).  Specifically, DTM has subjected Ashigur to

materially adverse employment actions because she opposed its discriminatory practices through

union grievances and internal complaints. DTM's retaliatory adverse actions include but are not

limited to:

     a.    refusing to compensate Ashigur for the days she was suspended pending DTM's

receipt of a medically unnecessary medical release from her obstetrician;

     b.    denying Ashigur's request for maternity leave, despite DTM's maternity policy,

which provides for a leave of absence caused by pregnancy for any employee, and despite its

contemporaneous grants of unpaid leave to similarly situated male employees.

     c.    refusing to allow Ashigur to return to work for more than two months after giving

birth, despite her requests to return within one week of childbirth and despite DTM's receipt of

her obstetrician's medical release.

     d.    immediately upon her return from maternity leave, subjecting Ashigur to

heightened scrutiny and unwarranted discipline, including issuing to her letters of counseling and

subjecting her to unpaid suspensions during the period from February 2009 through May 2009.

18.    The effect of the practices complained of in paragraph(s) 17(a) through (d) has

been to deprive Ashigur of equal employment opportunities and to otherwise adversely affect her

status as an employee because she has engaged in protected activities under Title VII and the

ADA.

19.     The unlawful employment practices complained of in paragraph 17(a) through (d) were intentional.

20.     The unlawful employment practices complained of in paragraph 17(a) through (d) were done with malice or reckless indifference to Ashigur's federally protected rights.

PRAYER FOR RELIEF

Wherefore, the Commission requests that this Court:

A.      Grant a permanent injunction enjoining DTM, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against pregnant employees by promulgating, maintaining or enforcing any discriminatory maternity or pregnancy policy.

B.      Grant a permanent injunction enjoining DTM, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from affording female employees less favorable terms and conditions of employment because of pregnancy, and retaliating against female employees for complaining about pregnancy discrimination.

C.      Grant a permanent injunction enjoining DTM, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from enforcing fetal protection policies in violation of Title VII.

D.      Grant a permanent injunction enjoining DTM, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from making medical inquiries or requiring medical examinations of pregnant employees that are not job related and consistent with business necessity, and from retaliating against employees for complaining about such medical inquiries and examinations.

E.    Order DTM to institute and carry out policies, practices, and programs, which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

F.    Order DTM to make Ashigur whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and by providing her any other affirmative relief necessary to eradicate the effects of DTM's unlawful employment practices.

G.    Order DTM to make Ashigur whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs 9, 13, and 17 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

H.    Order DTM to pay Ashigur for the malicious and reckless conduct, as described in paragraphs 9, 13, and 17 above, in amounts to be determined at trial.

I.    Grant such further relief as the Court deems necessary and proper in the public interest.

J.    Award the Commission its costs of this action.

JURY TRIAL DEMAND

EEOC requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel


DEBRA M. LAWRENCE
Regional Attorney

MARIA LUISA MOROCCO
Acting Supervisory Trial Attorney
Bar No. _____

PHILIP M. KOVNAT
Trial Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Philadelphia District Office
801 Market Street, Penthouse Suite 1300
Philadelphia, Pennsylvania  19107
(215) 440-2814
philip.kovnat@eeoc.gov